UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JOSE ANGEL GONZALES, | No. ED CV 13-1057-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on June 19, 2013, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on July 8, 2013, and July 9, 2013. Pursuant to the Court's Order, the parties filed a Joint Stipulation on February 3, 2014, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on September 14, 1966. [Administrative Record ("AR") at 24-26, 51, 415, 427.] He has a high school education, and past relevant work experience as a grinder, laborer, and packer. [AR at 21, 84-85, 94-97, 104, 444-46.]

On November 8, 2010, plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that he has been unable to work since May 28, 2008. [AR at 13, 68-73, 418-26.] After his applications were denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 27-37, 42-46, 48, 416-17, 428-36.] A hearing was held on June 15, 2012, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 13, 438-63.] A vocational expert ("VE") also testified. [AR at 455-61.] On October 1, 2012, the ALJ determined that plaintiff was not disabled. [AR at 22.] Plaintiff requested review of the decision with the Appeals Council. [AR at 8-9a.] When the Appeals Council denied plaintiff's request for review on May 1, 2013, the ALJ's decision became the final decision of the Commissioner. [AR at 5-7]; see Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well

as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.  THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled

and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since his alleged disability onset date, May 28, 2008.[1] [AR at 15.] At step two, the ALJ concluded that plaintiff has the severe impairments of congenital fusion at C2-3; moderate osteoarthritis of the lower cervical spine; mild osteoarthritis of the lumbar spine; small spurs on the bilateral feet; arthrosis and labral tear of the right shoulder; bilateral shoulder impingement; complex tear in the left wrist; diabetes; obesity; asthma; possible bilateral carpal tunnel syndrome; and some distal polyneuropathy of the lower limbs. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings. [AR at 17.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).[3] [Id.] Specifically, the ALJ determined:

---

[1]   The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. [AR at 15.]

[2]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]   20 C.F.R. §§ 404.1567(b) and 416.967(b) define "light" as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

> [plaintiff] can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours out of an eight-hour workday; sit for six hours out of an eight-hour workday; frequently perform postural activities. [Plaintiff] is precluded from climbing ladders, ropes, and scaffolds; working above shoulder level bilaterally; exposure to excessive air pollutants; hazardous machinery; unprotected heights; and forceful gripping of torquing bilaterally. [Plaintiff] can speak English, but is not fully proficient in English.

[Id.] At step four, based on plaintiff's RFC and the VE's testimony, the ALJ concluded that plaintiff is unable to perform any past relevant work. [AR at 20.] At step five, the ALJ found, based on plaintiff's RFC, vocational factors and the VE's testimony, that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as an inspector, packager, and sorter. [AR at 21-22.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from May 28, 2008, through the date of the decision. [AR at 22.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to provide legally sufficient reasons to reject plaintiff's subjective allegations. [JS at 4-10.] As explained below, the Court agrees with plaintiff and remands for further proceedings.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may only reject the claimant's testimony about the severity of his symptoms upon (1) finding evidence affirmatively suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons for doing so. See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); Lingenfelter, 504 F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2)

inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); 20 C.F.R. §§ 404.1529(c), 416.929(c). If properly supported, the ALJ's credibility determination is entitled to "great deference." Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

In an "Exertion Questionnaire," dated June 14, 2010, plaintiff indicated he does not do his own grocery shopping, house cleaning, or yard work. [AR at 92.] He reported that he tries to do "normal" daily activities, and explained that when he tries to wash dishes, he feels "real bad" pain. [AR at 91.] Plaintiff also stated that when he takes his medication, it "prevent[s]" him from doing his "normal thing[s]" because "it puts [him] to sleep," causes weakness, shortness of breath, and fatigue. [Id.] He indicated that he wears wrist bands on both wrists and can lift "like [two] bags of grocer[ies]," but "not to[o] heavy and not very often [be]cause I get a lot of pain [in] my two hands." [AR at 92-93.] Plaintiff further reported that he requires rest periods or naps two or three times a day because he gets "real sleepy" and usually takes a "[two] or [three] hour nap." [AR at 93.]

In a second, undated, "Exertion Questionnaire," plaintiff described his symptoms as including pain, fatigue, dizziness, nausea, shortness of breath, neck and back pain, and pain in his knees and feet. [AR at 110.] He indicated that his daily activities include washing dishes, washing clothes, cooking, and caring for his daughter, but that these activities cause pain in his arms, back, shoulders, waist, and hands, and swelling in his hands and wrists. [Id.] He reported that it takes him "about half [an] hour" to walk five blocks, and that doing so makes him "very tired and fatigue[d]." [Id.] Plaintiff also provided that he could lift "anything 10 [pounds] to 15 [pounds] anytime," such as groceries or dishes, but "just to [the] house." [AR at 111.] Plaintiff reported doing his own grocery shopping "twice," and explained that it takes him more than an hour to do household chores like "pick clothes, wash dishes, pick up toys." [Id.]

At the administrative hearing on June 15, 2012, plaintiff testified that he is unable to work because he has "carpal tunnel" in both hands, and because he "can't grab things," causing him

6

to drop them. [AR at 445-46, 449.] He indicated that pain in his back, waist, knees, feet, neck, shoulders and arms makes it difficult for him to concentrate, and that he has sleep apnea, diabetes, and breathing problems caused by asthma. [AR at 445-47, 451.] The ALJ asked plaintiff whether he had taken any medication on the day of the hearing, and plaintiff reported that he was taking two Vicodin pills "every four hours." [AR at 459.] When the ALJ asked why plaintiff was "looking like [he was] falling asleep," plaintiff stated that he did not believe his medication was the cause, but said that he had a "problem," in that he "fall[s] asleep," and "feel[s] tired." [Id.].

At step one of the two-step credibility analysis, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." [AR at 18.] The ALJ nevertheless found plaintiff's subjective complaints were "not credible to the extent they [were] inconsistent with the above residual functional capacity assessment." [Id.] Thus, at step two, as the record contains no evidence of malingering by plaintiff,[4] the ALJ was required to offer "specific, clear and convincing reasons" for rejecting his subjective symptom testimony. See Lingenfelter, 504 F.3d at 1036. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines [plaintiff]'s complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (internal quotation marks and citation omitted).

In his decision, the ALJ rejected plaintiff's subjective symptom testimony for the following reasons: (1) plaintiff's ability to participate in certain activities, including "car[ing] for his daughter, do[ing] household chores, and go[ing] grocery shopping, . . . undermined the credibility of [plaintiff]'s allegations of disabling functional limitations[;]" (2) plaintiff "exhibited no evidence of pain or discomfort while testifying at the hearing[;]" and (3) "the objective medical evidence does not support the alleged severity of symptoms." [AR at 18, 20.]

Having carefully reviewed the record, the Court finds that the ALJ's reasons for rejecting plaintiff's credibility do not constitute clear and convincing reasons and/or are not supported by substantial evidence. First, the ALJ's rejection of plaintiff's credibility because he "was able to care

---

[4] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

7

for his daughter, do household chores, and go grocery shopping" [AR at 18], misstates the record. See Lingenfelter, 504 F.3d at 1036 (explaining that reasons for discrediting plaintiff that misstate the record "provide[] no support for the [ALJ's] credibility finding[]"); Reddick, 157 F.3d at 722-23 ("In essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports. His paraphrasing of record material is not entirely accurate regarding the content or tone of the record."). Read as a whole, plaintiff's testimony demonstrates that his daily activities are actually very limited. Specifically, plaintiff reported that he does not do his own grocery shopping, house cleaning, or yard work. [AR at 92.] His statements also suggest that, when he does try to do some household chores, including those cited by the ALJ, even simple tasks can take plaintiff more than an hour, and the effort causes pain in his arms, back, shoulders, waist, and hands. [AR at 91, 110-11.] While plaintiff admitted that he had gone grocery shopping for himself, he indicated that this happened only "twice." [AR at 111.] Plaintiff also specified that he could occasionally lift two bags of groceries only if the bags were not too heavy and he did not have to carry them too far. [AR at 92.]

Moreover, the ALJ failed to explain how plaintiff's ability to "care for his daughter, do household chores, and go grocery shopping" undermines plaintiff's allegations of disabling functional limitations. [AR at 18]; see Reddick, 157 F.3d at 722 ("disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"); Smolen v. Chater, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996) (noting that, although the ALJ can rely on a plaintiff's substantial daily activities to discredit plaintiff's testimony regarding an inability to work, "this line of reasoning has its limits[;] . . . [t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits"); see also Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits). Further, even if plaintiff were able to handle some child care responsibilities, do some household chores, and do some grocery shopping, the ALJ failed to specify how plaintiff's ability to perform such tasks would translate into an ability to perform gainful employment. See Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (ALJ errs in failing to make a finding to the effect that ability to perform daily activities translated into the ability to perform appropriate work); Fair

v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."); see also Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). "Here, there is neither evidence to support that [plaintiff's] activities were transferable to a work setting nor proof that [plaintiff] spent a substantial part of [each workday] engaged in transferable skills." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (internal quotation marks and citation omitted). The ALJ's generalized statement, that "[s]ome of the physical and mental abilities and social interactions required in order to perform [plaintiff's daily] activities are the same as those necessary for obtaining and maintaining employment," is wholly insufficient to show transferability of those activities to a work setting. [AR at 18.]

Second, while the ALJ indicated that he gave "some slight weight" to his observation that plaintiff "exhibited no evidence of pain or discomfort while testifying" [AR at 18], the ALJ's "personal observations standing alone cannot support the adverse credibility finding." Orn, 495 F.3d at 640. Additionally, even assuming that plaintiff was not in physical discomfort during the hearing, plaintiff testified that he was taking two Vicodin pills every four hours. [See AR at 459.] While plaintiff denied that his evident drowsiness was the result of his pain medication, it may well have accounted for any "apparent lack of discomfort" noted by the ALJ. [See AR at 18, 459.]

Finally, the ALJ erred to the extent that he rejected plaintiff's testimony based on a lack of objective medical evidence. [AR at 20.] The ALJ concluded that plaintiff presented sufficient medical evidence of an underlying impairment that "could reasonably be expected to produce the alleged symptoms[.]" [Id.] Once plaintiff produces objective medical evidence of an underlying impairment that is reasonably likely to cause the alleged symptoms, medical findings are not required to support the severity of pain or symptoms alleged. See Smolen, 80 F.3d at 1282; see

also Social Security Ruling ("SSR") 96-7p,[5] 1996 WL 374186, at *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."). In any event, a review of the record reveals significant objective medical evidence of plaintiff's impairments that could reasonably cause pain and other symptoms, including bilateral shoulder impingement syndrome; a partial to full thickness tear of the rotator cuff, with a partial tear of the labrum, bilateral shoulders; bilateral carpal tunnel syndrome with injury to the triangular fibrocartilage; and tenosynovitis bilateral wrists. [See, e.g., AR at 139 (March 26, 2009, initial orthopedic consultation report, finding these impairments following review of submitted medical records, physical examination, computerized range of motion and muscle testing, and x-rays.]

In sum, the ALJ failed to provide any clear and convincing reasons supported by substantial evidence to support his rejection of plaintiff's credibility.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004); Varney v. Sec'y of Health & Human Servs. (Varney II), 859 F.2d 1396, 1401 (9th Cir. 1988); see also Lingenfelter, 504 F.3d at 1041 (9th Cir. 2007). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear

---

[5] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96; Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000).

Here, there is an outstanding issue that must be resolved before a final determination can be made. However, in an effort to terminate these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. Because there is an outstanding issue to be resolved, the Court has some flexibility in crediting plaintiff's testimony as true. See Varney II, 859 F.2d at 1401 (declining to address whether the credit-as-true rule should be adopted in cases where a remand for further proceedings is required before a disability determination can be made); Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir. 2008). "[T]here are other factors which may justify application of the credit-as-true rule, even where application of the rule would not result in the immediate payment of benefits." Vasquez, 572 F.3d at 593. For example, the Ninth Circuit has extended Varney II to credit testimony as true where the "delay experienced by [the claimant in her application] has been severe and because of [the claimant's] advanced age." Hammock v. Bowen, 879 F.2d 498, 503 (9th Cir. 1989); see Vasquez, 572 F.3d at 593-94 (following Hammock and crediting improperly rejected testimony as true where claimant was 58 years old and had waited over 6 years for her disability determination). Similar facts are present in this case. Plaintiff is presently 47 years old and has already waited more than three years for a disability determination. [See AR at 13, 68-73, 418-26.]

Crediting plaintiff's subjective testimony as true in this case is consistent with "the purpose of the credit-as-true rule," which is "to discourage ALJs from reaching a conclusion about a claimant's status first, and then attempting to justify it by ignoring any evidence in the record that suggests an opposite result." Vasquez, 572 F.3d at 594. "By requiring the ALJ to specify any factors discrediting a claimant at the first opportunity, the rule ensures that pain testimony is carefully assessed, and helps prevent unnecessary duplication in the administrative process." Vasquez, 572 F.3d at 594; see also Benecke, 379 F.3d at 595 ("Allowing the Commissioner to

11

decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.").

Finally, the record is fully developed as to the time period adjudicated by the ALJ with the sole exception that, if plaintiff's subjective testimony is credited, the VE's testimony does not indicate what jobs, if any, plaintiff could perform. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003) (remanding for further administrative proceedings where the ALJ improperly rejected the claimant's subjective complaints and lay testimony, and several "outstanding issues" remained to be resolved, including whether, according to a vocational expert, there was alternative work the claimant could perform with all of the limitations supported by the record). Rather, the VE's testimony only provides that if plaintiff's testimony is credited as true, he would be unable to perform any of the three jobs identified by the ALJ to support his step five determination. [See AR at 460-61.]

Accordingly, the Court will exercise its discretion and order the ALJ, on remand, to credit plaintiff's improperly rejected subjective allegations as true and incorporate them into plaintiff's RFC. See supra. Then, at step five, the ALJ shall determine, with the assistance of a VE, if there is any work existing in the national economy that plaintiff can perform.[6]

/
/
/
/
/
/
/
/
/
/

---

[6] Nothing in this decision is intended to disturb the ALJ's step four finding that plaintiff cannot perform his past relevant work. [See AR at 20.]

## VII.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request that the final decision of the Commissioner be vacated is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: February 20, 2014

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE